**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**JAMES MUIR, II,**

    **Plaintiff,**

v.                                                      Case No. 8:07-cv-727-T-24TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
                                             /

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claims for Social Security disability benefits and Supplemental Security Income payments.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was forty-nine years of age at the time of his administrative hearing in December 2003. He stands 5', 11" tall and weighed 384 pounds. Plaintiff has a high school education with some college. His past relevant work was as a farm laborer, sales

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

representative and installer for audio and video equipment, and warehouse laborer. Plaintiff applied for disability benefits and Supplemental Security Income payments in January 2002,[2] alleging disability as of June 1, 1998,[3] by reason of osteoarthritis, obesity, sleep apnea, a blocked airway, and a lower back injury. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. In essence, Plaintiff testified that he is unable to work due to a multitude of impairments. Plaintiff indicated he suffers from osteoarthritis, bone spurs and calcifications in his feet which cause foot pain when standing, damaged knees, two herniated discs in his back, a minor hernia, fatigue, sleep apnea, diabetes, hypertension, non-alcoholic cirrhosis/fatty liver, recurring growths in his throat (vocal cord polyps) which require surgery and cause raspiness and/or loss of his voice, urinary problems, acid reflux laryngitis, and obesity. Plaintiff testified that the doctor told him he needed to lose at least 100 pounds; he used to weigh 400 pounds and is down to 384 pounds. His obesity affects his ability to stand. His osteoarthritis results in consistent pain. His back pain bothers him a couple of times per week. As for fatigue, Plaintiff testified that he has good days and bad days. Plaintiff takes medication for pain and hypertension. He said there are no real side effects aside from dry mouth. According to Plaintiff, his worst problems are frequent urination and fatigue.

---

[2]The record reveals a protective filing date of October 29, 2001. (R. 46, 66).

[3]Plaintiff amended his onset date to March 1, 2000. (R. 520).

Plaintiff was last employed in 1999 and worked in a warehouse. He testified that he stopped working because he was laid off. Prior to that, Plaintiff worked for about five years selling audio video equipment. And, prior to that, Plaintiff worked on a family farm.

Regarding his physical capabilities, Plaintiff testified he can sit for fifteen to twenty minutes before he tightens up and has to get up and walk around. He can stand for about 20 to 30 minutes at a time before he has to sit down due to pain; his obesity also affects his ability to stand. He can walk approximately 500 to 700 feet before he experiences pain or fatigue, and he walks with a slight limp. Plaintiff indicated that it is difficult for him to kneel down and get back up and he only uses stairs if he absolutely has to. Plaintiff testified that, once or twice a week, he has to urinate eight to ten times in an hour. On other days, Plaintiff indicated that he urinates every 30 to 60 minutes.[4]

Plaintiff is divorced and lives with his step-daughter, her husband, and their two children. Plaintiff described a typical day as performing low impact activities at home. He does some housework with his daughter-in-law, cooks, and washes dishes. He walks around the yard and plays the guitar. Plaintiff used to play racquetball and a variety of physical activities, but no longer does. As for his personal care, Plaintiff takes showers but not baths. He does not have problems dressing but cannot tie shoelaces; he leaves his sneakers untied or wears loafers. Plaintiff lies down several times a day. Plaintiff testified that, on his doctor's recommendation, he tries to nap for 30 to 60 minutes a day. Plaintiff goes to bed around 10:00 p.m., but sleeps for only about three hours before he has pain or has to get up and

---

[4]This testimony is not particularly clear. *See* (R. 516).

urinate. He uses a breathing machine (BIPAP) at night and occasionally when napping. He has had the machine for nine or ten months but has been on some type of breathing machine for a couple of years due to his sleep apnea. According to Plaintiff, even with the breathing machine he does not sleep well. In addition, Plaintiff does not drive and does not have a driver's license. He indicated that he does not drive because of his sleep apnea and because he has difficulty getting in cars due to his girth. He testified that he had three motor vehicle accidents over a ten-year period where he fell asleep [while driving] and totaled the car. *See* Plaintiff's testimony (R. 498-526).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. Pertinent to the decision is the Plaintiff's date last insured of March 31, 2001.

By his partially favorable decision of June 25, 2004, the ALJ found that while Plaintiff has severe impairments related to hypertension, sleep apnea, a history of vocal cord polyps, osteoarthritis of the cervical and lumbar spine, obesity, liver disease, and diabetes, he nonetheless had the residual functional capacity to perform [a full range of] sedentary work. Upon those findings, the ALJ determined that Plaintiff was unable to perform any past work. Upon that determination and direct application of the grids, the ALJ concluded that (1) from Plaintiff's alleged onset date of March 1, 2000, through April 20, 2004, Plaintiff was able to make a vocational adjustment to work that existed in significant numbers in the national economy and was not disabled under the grids,[5] and (2) beginning on April 21, 2004, the date

---

[5]At the time of alleged onset, Plaintiff was 45 years old. Under the regulations, that is defined as a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c) (defining younger

4

Plaintiff attained age 50 and his age category changed,[6] the grids directed a finding of disability. Because the ALJ concluded that Plaintiff was disabled as of April 21, 2004, but not prior thereto, Plaintiff was found to be eligible for Supplemental Security Income payments as of that date but was not entitled to a period of disability or disability benefits during any period of time given his date last insured of March 31, 2001. (R. 11-20). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.*

---

person as one under age 50).

[6]Under the regulations, a person between the ages of 50 and 54 is considered a "person closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d)

at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ in this case decided the Plaintiff's claims pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq*. These Regulations apply in cases where an individual's medical

condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* at Part 404, Subpt. P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## III.

The Plaintiff raises four claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ erred in failing to obtain vocational expert testimony in analyzing whether the claimant could perform other work;

7

(2) The ALJ erred in mechanically applying the age category of the Medical-Vocational Guidelines ("Grids") due to the claimant's borderline age;

(3) The ALJ erred in determining the claimant's RFC; and

(4) The ALJ erred in failing to make a credibility assessment of the claimant's testimony.

The pertinent time period in this case is from March 1, 2000, Plaintiff's alleged onset date of disability, through April 20, 2004. Because consideration of Plaintiff's first two claims rests on the resolution of his last two claims, the claims are addressed in reverse order.

By his fourth claim, Plaintiff recounts portions of his own testimony and argues generally that the ALJ failed to properly evaluate his subjective testimony. Plaintiff also appears to suggest that the ALJ erred by not mentioning his obesity and hypertension. (Doc. 15 at 9-10). The Commissioner counters that the ALJ thoroughly reviewed Plaintiff's complaints in accordance with the appropriate regulatory criteria and Eleventh Circuit authority and provided record-based reasons for not crediting the same in its entirety. (Doc. 16 at 15-19).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Wilson*, 284 F.3d at 1225. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected

to give rise to the alleged pain. *Id.* (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Holt*, 921 F.2d at 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See id.* at 1562; *Hale*, 831 F.2d at 1012. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Wilson*, 284 F.3d at 1225 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). The lack of a sufficiently explicit credibility finding may be cause for a remand if the credibility is critical to the outcome of the case. *Foote*, 67 F.3d at 1562. Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *See id.*

Upon careful consideration, I find that the ALJ complied with the applicable standard in assessing Plaintiff's subjective allegations, and his determination is supported by substantial evidence. Here, the ALJ clearly was aware of the applicable standard because he cited Eleventh Circuit authority as well as the pertinent ruling and regulations. (R. 15). The decision reveals that the ALJ credited Plaintiff with physical impairments that reasonably

could give rise to the symptoms and functional limitations alleged, but not to the extent alleged. *See* (R. 16-17). Thus, it is evident that the ALJ complied with the applicable standard. *See Wilson*, 284 F.3d at 1226.

Furthermore, despite Plaintiff's complaints to the contrary, I find that the ALJ's consideration of the same was adequate. To this end, the ALJ provided several reasons for discounting Plaintiff's allegations of disabling limitations. Thus, the ALJ noted that (1) Plaintiff worked for many years while he had [undiagnosed sleep] apnea, (2) Plaintiff quit working because he was laid off, not because he was unable to work, and he has not looked for work since then, (3) while Plaintiff testified that his physicians told him to take two thirty-minute naps per day, the record does not confirm such, (4) doctors noted that Plaintiff had not always been entirely compliant with his CPAP machine and Plaintiff's sleep apnea improved with the use of one, (5) although Plaintiff had problems with hoarseness due to vocal cord polyps, the evidence suggests that the problem resolved after surgery, and if the polyps recurred, they could again be removed, (6) there are no objective or clinical findings consistent with diabetic neuropathy so as to support Plaintiff's claim of stabbing pain in his feet, (7) Plaintiff testified that he occasionally is able to perform house and yard work, and (8) no treating physician has indicated that Plaintiff is unable to perform sedentary work. (R. 16-17). These reasons are rational and supported by record. To the extent that certain of the ALJ's reasons may not be adequately explicit, the totality of the record fails to demonstrate that Plaintiff's impairments resulted in an inability to perform sedentary work at

all times pertinent to the decision. *See Foote*, 67 F.3d at 1562. Consequently, Plaintiff is not entitled to relief on this claim.[7]

By his third claim, Plaintiff argues generally that the ALJ erred in determining his residual functional capacity ("RFC"). While Plaintiff recognizes that the ALJ determined that he retained the RFC to perform the full range of sedentary exertional work,[8] he points out that

---

[7] Any error on the ALJ's part in not specifically addressing Plaintiff's testimony that he can walk only 500 feet, sit for 15 minutes, stand for 20-30 minutes, and "has had occasion to need to urinate up to 8 times in an hour," is harmless given the paucity of support for such in the record evidence. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying the harmless error rule to an ALJ's misstatement of evidence in a Social Security case); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected); Fed. R. Civ. P. 61. Although the record supports the existence of Plaintiff's osteoarthritis and obesity, there is no evidence that supports the limitations alleged with respect to sitting, standing, and walking, and no doctor noted restrictions in those activities. As for the complaints of frequent urination, there are four notations in the medical record of such. (R. 161, 322, 326, 225). However, no where are allegations noted such as the ones to which Plaintiff testified. Notably, the instant record reveals Plaintiff was seen by a urologist on only two occasions in late 2002, and the ALJ addressed this evidence. (R. 14, 473-74). Lastly, it is worth noting that aside from recounting his testimony, Plaintiff fails to point to specific allegations that should have addressed but were not. Nor does he cite to any record evidence which supports his subjective allegations. To the extent Plaintiff faults the ALJ for not mentioning his obesity and hypertension, he is simply incorrect. The ALJ addressed the medical evidence revealing obesity and hypertension, and noted that Plaintiff's hypertension was treated with medication and his exertional capabilities were somewhat limited due to his obesity. (R. 13-14, 17). The ALJ also fund that both constituted severe impairments under the Act. *See* (R. 14, 19).

[8] "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a). Social Security Ruling 83-10 elaborates on the definition of sedentary by providing that, "[o]ccasionally means occurring from very little up to one-third of the time," and that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Kelley v. Apfel*, 185 F.3d 1211, 1213 n.2 (11th Cir. 1999).

the ALJ noted on one occasion in the body of the decision "an exertional capacity for a limited range of sedentary work." Plaintiff also recites certain record evidence and portions of his own testimony. He also suggests that his testimony supports the limited walking abilities contemplated by listing 1.00. Finally, Plaintiff asserts that the ALJ erred by failing to identify Plaintiff's physical limitations from his morbid obesity in determining his RFC, and cites the rule of law in this circuit that an ALJ must consider the combined effects of all impairments in evaluating disability. (Doc. 15 at 7-9). The Commissioner counters that the ALJ properly evaluated Plaintiff's RFC after a thorough review of the record and substantial evidence supports his determination that Plaintiff retained the RFC to perform sedentary work. (Doc. 16 at 11-15).

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. At this stage of the evaluation process, the burden is on the Plaintiff to show that he can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986).

At the outset, this claim fails due to Plaintiff's insufficient development of the issue. Notably, Plaintiff does not include citations of the governing legal standards with respect to RFC or assert discrete record based challenges to such. Rather, this particular claim is a mishmash of issues with no specific development as to any. Plaintiff was cautioned previously that

failure to sufficiently develop issues may subject a claim to being disregarded. *See* (Doc. 14 at 1-2). In this instance, that directive applies.

The claim also fails on the merits. As indicated above, the ALJ adequately discounted Plaintiff's subjective allegations to the extent they were alleged to be disabling and exceeded the parameters of sedentary work. As for the medical record, no treating or examining doctor identified particular functional limitations or provided a RFC assessment, despite attempts by Plaintiff and his counsel to obtain one. *See* (R. 525-26). Further, the ALJ discounted the only RFC opinions of record on the basis that Plaintiff's subjective allegations and the medical record supported a more restrictive RFC.[9] *See* (R. 15). To this end, the ALJ gave Plaintiff the benefit of the doubt. In the circumstances here, the ALJ appropriately considered all record evidence in determining Plaintiff's RFC and substantial evidence supports his determination. To the extent the Plaintiff faults the ALJ for not considering his obesity and any limitations resulting therefrom when assessing his RFC, the decision demonstrates otherwise. The ALJ specifically noted that Plaintiff's exertional capabilities were somewhat limited due to his obesity and its effects on his endurance. *See* (R. 17). The decision also reflects that the ALJ considered the combined effect of Plaintiff's impairments,

---

[9]The record contains two RFC assessments completed by non-examining, state agency doctors. The RFC dated May 25, 2002, indicated Plaintiff was capable of performing light exertional work with occasional postural limitations. (R. 171-77). The RFC dated September 11, 2002, indicated Plaintiff was capable of performing medium exertional work. (R. 181-87). The ALJ concluded Plaintiff was capable of performing the full range of sedentary exertional work. (R. 17-19). Even had the ALJ credited Plaintiff with occasional postural limitations, those restrictions would not erode the occupational base for a full range of unskilled, sedentary exertional work so as to preclude utilization of the grids. *See* SSR 96-9p, 1996 WL 374185, *7-8 (S.S.A.).

13

including obesity, throughout the decision. *See* (R. 13-17). There is no error in this regard. *See Wilson*, 284 F.3d at 1224-25; *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986). Furthermore, to the extent Plaintiff suggests the ALJ found that he could perform "a limited" range of sedentary work, review of the decision reveals otherwise. While the ALJ did state this in one sentence of the decision (R. 18), the decision, including the specific findings, make clear that the ALJ found that Plaintiff retained the ability to perform a full range of sedentary work. To the extent the ALJ indicated otherwise, the error is harmless and Plaintiff does not seriously dispute otherwise. Finally, any suggestion by Plaintiff that he has demonstrated that his condition(s) meets or equals any listed impairment under listing 1.00, fails.[10] In sum, Plaintiff is not entitled to relief on this claim.

By his second argument, Plaintiff contends that "[t]he ALJ erred in mechanically applying the age category of the Medical Vocational Guidelines due to the claimant's borderline age." By this argument, Plaintiff challenges the ALJ's reliance on the grids in determining that he was disabled as of the time he attained age fifty but not before. According to Plaintiff, his impairments were the same from the alleged onset date through his 50th

---

[10]In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing. Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224.

14

birthday, and thus the ALJ erred by mechanically applying the grids.[11] Citing the Eleventh Circuit's decision in *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984), Plaintiff also suggests that the ALJ was required to establish his ability to adapt to a new work environment by evidence independent of the grids because there is evidence that his ability to do so is less than the level established by the grids for persons of his age, i.e., his age was much older than his actual, chronological age. (Doc. 15 at 6-7). The Commissioner counters that the ALJ properly applied the grids in finding Plaintiff disabled upon attaining age 50, Plaintiff has failed to show that his ability to work is less than the level established by the grids for a given age, and the ALJ was not required to consider Plaintiff's age at onset as a borderline case. (Doc. 16 at 9-10).

A five-step sequential evaluation process is employed for determining whether a claimant is disabled and therefore entitled to benefits. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Here, Plaintiff challenges the ALJ's actions at step five. At this step, the Commissioner must establish that the claimant can perform other work (i.e., work that is not past relevant work) that exists in the national economy. This burden may sometimes be met through exclusive reliance on the grids when each variable (age, education, previous work experience) on the appropriate grid accurately describes the claimant's situation. *See Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987). Exclusive reliance on the grids is not appropriate when the claimant is unable to perform a full range of work at a given functional

---

[11]Plaintiff relies on *Chester v. Heckler*, 610 F. Supp. 533, 534-35 (S.D. Fla. 1985), for the proposition that an ALJ may not mechanically apply the age criteria of the grids in borderline situations.

level or when a claimant has nonexertional impairments that significantly limit basic work activities. *Foote*, 67 F.3d at 1559.

Upon consideration, I conclude that the ALJ properly utilized the grids at step five to find Plaintiff disabled as of April 21, 2004, but not prior thereto. First, Plaintiff fails to establish that the ALJ erred by finding that he retained the functional capacity to perform the full range of sedentary work, and therefore the ALJ properly consulted the grids for determination. Here, during the adjudicatory period, Plaintiff's age, as defined in the grids, ranged from that of a younger person (under age 50) at the time of his alleged onset of disability, at which time Plaintiff was 45 years old, to that of a person closely approaching advanced age (50 -54), some four months after the administrative hearing when he turned 50 years old. *See* 20 C.F.R. § 404.1563(c)-(e) (defining age categories). Utilizing grid rule 201.21, a person with Plaintiff's residual functional capacity (for a wide and/or full range of sedentary work), education and work experience is <u>not</u> considered disabled. The ALJ in this case correctly found so, and determined that Plaintiff was not disabled from his alleged onset date of March 1, 2000, through April 20, 2004. However, upon obtaining "closely approaching advanced age" (50-54 years of age) as of April 21, 2004, the ALJ correctly applied grid rule 201.14 to find Plaintiff disabled as of that date. Contrary to Plaintiff's summary assertion, he has not shown that the proposition in *Reeves* is applicable in his case. In other words, Plaintiff proffers no substantial credible evidence to rebut the age categories utilized by the ALJ. Furthermore, Plaintiff's reliance on *Chester* is misplaced. Plaintiff cites *Chester* for the proposition that an ALJ may not mechanically apply the age criteria of the

grids. I do not disagree with this general proposition. The regulations provide that the age categories will not be mechanically applied in a borderline situation. *See* 20 C.F.R. § 404.1563(b). A borderline situation exists where a claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that the claimant is disabled. *See id*. Plaintiff's case is not borderline. *Cf. Chester*, 610 F. Supp. at 534-35. Contrary to Plaintiff's urging, there is no error in the ALJ's use of the grids in this case.

Finally, by his first claim, Plaintiff faults the ALJ for not obtaining vocational expert testimony at step five of the sequential evaluation when considering whether other work existed in the national economy that he could perform. In support of this assertion, Plaintiff points to one sentence in the decision in which the ALJ stated that Plaintiff had the capacity for performing a "limited" range of sedentary exertional work. Given that statement by the ALJ, Plaintiff contends the ALJ was precluded from using the grids for decision and instead should have obtained vocational expert testimony. Plaintiff also contends his nonexertional impairments (sleep disorders, urinary incontinence, and liver function limitation) dictated the need for vocational expert testimony. (Doc. 15 at 5-6). The Commissioner counters that the ALJ properly relied on the grids for decision and was not required to obtain vocational expert testimony in light of his finding that Plaintiff could perform the full range of sedentary exertional work. (Doc. 16 at 5-8).

This case presents the recurring issue of whether the ALJ may rely exclusively on the grids for decision, or whether a vocational expert is required. The Eleventh Circuit's decision in *Foote* is instructive on the law:

> Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. . . . The Secretary bears the burden of establishing that Appellant, who could not perform h[is] past work, could perform alternative work in the national economy. Although this burden can sometimes be met through straightforward application of the Medical-Vocational Guidelines (the "grids"), the regulations regarding the implementation of the grids caution that they are only applicable under certain conditions. For example, the claimant must suffer primarily from an exertional impairment, without significant non-exertional factors. . . . Exclusive reliance on the grids is appropriate in cases involving only exertional impairments (impairments which place limits on an individual's ability to meet job strength requirements). . . . Exclusive reliance on the grids is inappropriate when a claimant has a nonexertional impairment that significantly limits the claimant's basic work activities. . . . If the grids are inapplicable, the Secretary must seek expert vocational testimony.

67 F.3d at 1559 (citations omitted).

Given the ALJ's finding that Plaintiff retained the ability to perform a full range of sedentary work, the straightforward application of the grids in this case was appropriate. *See id.* Plaintiff's contention that the ALJ found he was capable of performing only a limited range of sedentary work is disingenuous. Although the ALJ did state as much in one sentence of the decision, *see* (R. 18), a fair reading of the decision in its entirety leaves no doubt that such statement was simply a misstatement and that the ALJ found that Plaintiff could perform the full range of sedentary work. *See* (R. 18-19).

18

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

Respectfully submitted this
27th day of February 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable Susan C. Bucklew, United States District Judge
Counsel of Record